UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**BERTIE MCCOY**,                                            Civil Case No. 3:12-CV-00556-KI

                    Plaintiff,                              OPINION AND ORDER

        v.

**CAROLYN W. COLVIN**,

                    Defendant.

        Bertie McCoy
        PO Box 12767
        Portland, OR 97212

                *Pro se* Plaintiff

        S. Amanda Marshall
        United States Attorney
        District of Oregon
        Adrian L. Brown
        Assistant United States Attorney
        1000 SW Third Ave., Suite 600
        Portland, OR 97201

Page 1 - OPINION AND ORDER

Franco L. Becia
Special Assistant United States Attorney
Office of the General Counsel
Social Security Administration
701 5th Ave.
Suite 2900 M/S 221A
Seattle, WA 98104-7075

      Attorneys for Defendant

KING, Judge:

*Pro se* plaintiff Bertie McCoy brings this action pursuant to section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner[1] denying plaintiff's application for disability insurance benefits ("DIB") and supplemental security income benefits ("SSI"). I affirm the decision of the Commissioner.

## BACKGROUND

McCoy filed applications for DIB and SSI on April 2, 2008. The applications were denied initially and upon reconsideration. After a timely request for a hearing, McCoy appeared and testified before an Administrative Law Judge ("ALJ") on May 17, 2010. McCoy declined representation either by a lawyer or by a qualified non-attorney.

On July 29, 2010, the ALJ issued a decision finding McCoy was not disabled within the meaning of the Act and therefore not entitled to benefits. This decision became the final decision of the Commissioner when the Appeals Council declined to review the decision of the ALJ on January 19, 2012.

---

[1]Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this suit.

Page 2 - OPINION AND ORDER

## DISABILITY ANALYSIS

The Social Security Act (the "Act") provides for payment of disability insurance benefits to people who have contributed to the Social Security program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1). In addition, under the Act, supplemental security income benefits may be available to individuals who are age 65 or over, blind, or disabled, but who do not have insured status under the Act. 42 U.S.C. § 1382(a).

The claimant must demonstrate an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to cause death or to last for a continuous period of at least twelve months. 42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A). An individual will be determined to be disabled only if his physical or mental impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining if a person is eligible for either DIB or SSI due to disability. The evaluation is carried out by the ALJ. The claimant has the burden of proof on the first four steps. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007); 20 C.F.R. §§ 404.1520 and 416.920. First, the ALJ determines whether the claimant is engaged in "substantial gainful activity." 20 C.F.R. §§ 404.1520(b) and 416.920(b). If the claimant is engaged in such activity, disability benefits are denied. Otherwise, the ALJ proceeds to step two and determines whether the claimant has a medically severe impairment or combination of impairments. A severe impairment is one

Page 3 - OPINION AND ORDER

"which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. §§ 404.1520(c) and 416.920(c).  If the claimant does not have a severe impairment or combination of impairments, disability benefits are denied.

If the impairment is severe, the ALJ proceeds to the third step to determine whether the impairment is equivalent to one of a number of listed impairments that the Commissioner acknowledges are so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  If the impairment meets or equals one of the listed impairments, the claimant is conclusively presumed to be disabled.  If the impairment is not one that is presumed to be disabling, the ALJ proceeds to the fourth step to determine whether the impairment prevents the claimant from performing work which the claimant performed in the past.  If the claimant is able to perform work she performed in the past, a finding of "not disabled" is made and disability benefits are denied.  20 C.F.R. §§ 404.1520(f) and 416.920(f).

If the claimant is unable to perform work performed in the past, the ALJ proceeds to the fifth and final step to determine if the claimant can perform other work in the national economy in light of his age, education, and work experience.  The burden shifts to the Commissioner to show what gainful work activities are within the claimant's capabilities.  Parra, 481 F.3d at 746. The claimant is entitled to disability benefits only if he is not able to perform other work.  20 C.F.R. §§ 404.1520(g) and 416.920(g).

## STANDARD OF REVIEW

The court must affirm a denial of benefits if the denial is supported by substantial evidence and is based on correct legal standards.  Molina v. Astrue, 674 F.3d 1104, 1110 (9th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion" and is more than a "mere scintilla" of the evidence but less

than a preponderance.  Id. (internal quotation omitted).  The court must uphold the ALJ's

findings if they "are supported by inferences reasonably drawn from the record[,]" even if the

evidence is susceptible to multiple rational interpretations.  Id.

## THE ALJ'S DECISION

The ALJ noted McCoy had not engaged in any substantial gainful activity since January

1, 2008, although she had provided in-home child care until March 28, 2008.  She had the severe

impairments of myalgias affecting her back, knees, and other joints, as well as obesity.  However,

the ALJ also found that these impairments, either singly or in combination, did not meet or

medically equal the requirements of any of the impairments listed in 20 C.F.R. § 404, Subpart P,

Appendix 1.  The ALJ concluded McCoy had the residual functional capacity ("RFC") to

perform less than the full range of light work.  She could lift and carry 20 pounds occasionally

and 10 pounds frequently.  She could stand and walk for eight hours, and could sit for eight

hours.  She could occasionally climb, kneel, crouch, crawl, and pull, but she could not reach

above shoulder level with her non-dominant left shoulder.  She could perform simple tasks and

minimally detailed tasks.

Given this RFC, the ALJ relied on the testimony of a vocational expert ("VE") to find

McCoy could perform her past relevant work as a childcare provider, foster care provider, and

housekeeper.

## FACTS

McCoy was 61 years old on the date of her alleged disability onset date of January 1,

2008.  She had some high school education and obtained her General Educational Development

("GED") diploma when she was 40 years old.  She had worked as a childcare provider, foster care provider, and housekeeper.

McCoy began experiencing pain after a rollover car accident in September 2006.  She was hospitalized for two days, but CT scans of her cervical, thoracic and lumbar spine returned normal results.  She undertook physical therapy for a month, which halved her pain, and she committed to a home therapy protocol and water aerobics.

McCoy returned to OHSU complaining of "lifestyle-altering pains in her entire back, both knees, and both shoulders, all new since the accident" on May 4, 2007.  Tr. 210.  She described the pain as if her back had been broken in two.  She was taking Ibuprofen.  She was still running her childcare business, but had family help.  She could get out of the chair and on the exam table without assistance.  She was prescribed Nortriptyline and Voltaren (used to treat pain and inflammation).

On August 10, 2007, Kim Webster, MD, undertook a physical examination of McCoy, at the request of Disability Determination Services ("DDS"), in which McCoy complained of low back pain, and bilateral shoulder and knee pain.  McCoy reported she could walk five to six blocks before getting tired, she was caring for two children 60 hours a week, and she exhibited "a lot of pain behavior inconsistencies and poor effort."  Tr. 236.  After extensive examination and testing, including range of motion, coordination and gait, straight leg raising, and gross/fine motor skills, Dr. Webster concluded McCoy was not restricted in the number of hours she could stand, walk or sit.  Dr. Webster limited McCoy to lifting 10 pounds frequently and 20 pounds occasionally, and nothing overhead.  McCoy was also limited in climbing, kneeling, crawling and pulling because of a possible left rotator cuff irritation.

McCoy continued to work, with the help of her sister and a friend for a period of time, and then on her own, until March 28, 2008.

On June 5, 2008, McCoy sought treatment from Ellen Iwasaki , FNP, for back pain, as well as ankle, knee, arm and shoulder pain.  Nurse Iwasaki prescribed Voltaren and Nortriptyline.

Charles W. Webb, DO, treated McCoy in late June 2008 for her knee, back and shoulder pain.  She reported not taking any over-the-counter medicines, but walking for exercise.  She complained she hurt all over.  He believed she had the majority of findings for polymyalgia rheumatica–aching and stiffness–and prescribed steroids.  Two and a half weeks later, McCoy reported the steroids helped "a great deal to the point that she only has some mild pain in the right hip and min[imum] pain in the back," and all her other pains had dissipated.  Tr. 294.  She displayed a normal gait, normal and symmetric reflexes, but paraspinal muscle spasms in the lumbar, SI joint areas, and sacrum, with decreased motion.  Dr. Webb manipulated her spine and McCoy tolerated it well.

John H. Ellison, MD, examined McCoy on July 12, 2008.  He assessed her chronic low back pain and joint pain, but believed her limited range of motion was magnified.

In August of 2008, McCoy reported her pain was down from 10/10 to 3/10 with the Prednisone, and Dr. Webb manipulated her spine again.

Also in August, John Adler, PhD, examined McCoy at the request of DDS.  McCoy reported having performed childcare for the past 30 years.  The last two years, she stopped taking babies because she had trouble picking them up.  Nevertheless, her business did "adequately, but some of the children needed outside activities which were unavailable and that affected her business.  She said she stopped in fact, because she could not deal with the stress, noise and

feeding the children.  Again, other than back problems, she denied major problems doing the

child care over most of the past 30 years." Tr. 219.  McCoy told Dr. Adler she attended church

seven days a week.  She rode the bus or got rides from friends.  Her goddaughter helped with

some of the chores because of problems bending and with her shoulder.  Dr. Adler found no

evidence of significant mental impairment, but "her cognitive skills did appear to be a significant

problem which she did not mention."  Tr. 221.  Nevertheless, Dr. Adler felt she was capable of

performing simple tasks, but would have "significant trouble" with moderately difficult or more

complex tasks.  Tr. 222.

McCoy reported to the emergency room on November 13, 2008 complaining of mild

paresthesia[2] in her face.  She underwent a CT scan, which returned normal results.  She was

diagnosed with mild dental pain and told to apply ice intermittently for two days.

Nurse Iwasaki recommended Ibuprofen for tingling and increasing arm pain on

November 19, 2008.

Nurse Iwasaki referred McCoy to the OHSU Rheumatology Clinic for evaluation of

McCoy's muscle and joint pain on March 9, 2009.  McCoy reported low back, neck, shoulder

and knee pain from the 2006 car accident.  Although he reviewed chart notes indicating that with

Prednisone McCoy's pain was reduced from 10/10 to 3/10, Joseph Lutt, MD, noted McCoy said

it only helped a little.  She also informed Dr. Lutt that Ibuprofen stopped her knee and shoulder

pain completely, and he expressed confusion about why she did not take it more often.  Dr. Lutt

---

[2]"[A] sensation of pricking, tingling, or creeping on the skin having no objective cause
and usually associated with injury or irritation of a sensory nerve or nerve root."
http://www.merriam-webster.com/medlineplus/paresthesia

recommended NSAIDs, encouraged McCoy to discuss treatment of her depression with her primary care provider, and referred her to a sleep clinic.

In a follow-up referral for possible fibroymyalgia symptoms, Molly Aultz, FNP, reported McCoy's pain was at 5/10. McCoy had not started taking the naprosyn due to the cost. She had 10/18 tender points, which were "lower than diagnostic criteria and mainly related to neck and lower back[.]" Tr. 340. Nurse Aultz recommended Aleve, a referral for sleep evaluation, and treatment of McCoy's depression.

McCoy initiated care at North by Northeast Community Health Center, reporting three to four months of facial tingling, on June 11, 2009. She was not treating herself with any medications. She noted an increase in NSAID use with her car accident two or three years before. Her treating provider instructed her to avoid NSAIDS to reduce heartburn and hypothesized that the tingling was due to a peripheral nerve. McCoy returned in October of 2009 reporting sore and aching chest, back, hip and shoulder which was interfering with her sleep. She reported some relief with Ibuprofen and warm baths, was not interested in Prednisone, but obtained a prescription for Nortriptyline.

In January 2010, she reported right wrist pain and continuing back pain. She reported her back and knee pain responded well to walking and that her chronic muscle pain decreased with the Nortriptyline. The next month, because she had made several lifestyle changes like walking more in the neighborhood and eating less, her blood pressure had decreased. She had no shoulder or neck pain, and the Nortriptyline had helped her chronic pain. The following month, in March, she noted minimal tenderness in her arms and legs, but reported low back pain and

burning hips.  She was still losing weight and bringing her blood pressure down.  In April, her provider recommended increasing her Ibuprofen dosage to treat her back pain.

She was five feet four weighing 200 pounds at the time of the hearing, which was a normal weight for her.

## DISCUSSION

McCoy is unrepresented and chose not to file an opening or reply brief.  Courts "ordinarily will not consider matters" not argued "with any specificity" by a claimant.  Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008).  Here, because McCoy is proceeding *pro se*, I will liberally construe her complaint and review the ALJ's decision for legal error.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007).

I note no errors at Step One, Step Two or Step Three.

The ALJ concluded McCoy could perform less than the full range of light work, with specific lifting and postural limitations, and could perform simple tasks.  The ALJ came to this conclusion by assessing McCoy's credibility, finding that she could reasonably be suffering from some of the symptoms she described, but that her statements about the intensity, persistence and limiting effects were not entirely credible.  The ALJ noted that after the car accident, McCoy's imaging was normal, she continued to work after her alleged onset date of disability, she appeared to magnify her limited range of motion on at least two consultative examinations, and she experienced significant relief from conservative treatment over the years.  She also engaged in a variety of activities, including walking, attending church, caring for herself, preparing her own meals, and performing household chores.  The ALJ noted she traveled to Kansas City to visit her grandson in 2009.  Finally, she informed the consultative examiner that she was able to

Page 10 - OPINION AND ORDER

adequately perform her job, but the children needed outside activities which were not available, and she was tired of the stress, noise and feeding of children. As the ALJ noted, this evidence suggests McCoy retained the functional capacity to perform her past relevant work.

The ALJ also gave germane reasons for finding McCoy's goddaughter's statement not credible; it conflicted with the medical evidence and with McCoy's own report about her daily activities.

Finally, and most importantly, the ALJ did not reject any of McCoy's treating or examining physicians. Instead, she relied on Dr. Adler's mental examination, limiting McCoy to simple tasks, and on Dr. Webster's physical examination, in forming the RFC. There were no contradictory reports. As a result, the hypothetical questions the ALJ posed to the VE specified all of McCoy's limitations and restrictions and, as a result, the ALJ was entitled to rely on the VE's testimony that McCoy could perform her past relevant work.

In sum, I conclude the ALJ did not err when she found McCoy could perform her past relevant work; the ALJ gave legally sufficient reasons supported by substantial evidence in the record.

## CONCLUSION

The findings of the Commissioner are based upon substantial evidence in the record and the correct legal standards. For these reasons, the court affirms the decision of the Commissioner.

IT IS SO ORDERED.

DATED this ___14th___ day of May, 2013.

                                            /s/ Garr M. King
                                            Garr M. King
                                            United States District Judge

Page 11 - OPINION AND ORDER